1

2

3

4

5                    UNITED STATES DISTRICT COURT

6                   EASTERN DISTRICT OF WASHINGTON

7  PAMELA A. BAUGHER                    NO:  4:14-CV-5118-TOR

8                        Plaintiff,
                                        ORDER ON MOTIONS FOR
       v.                               SUMMARY JUDGMENT AND
9                                       MOTION TO DISMISS

10 KADLEC HEALTH SYSTEM dba
   REGIONAL MEDICAL CENTER,
11 STATE OF WASHINGTON, and
   ALLIANCE FOR CONSISTENT
12 CARE PROGRAM,

13                      Defendants.

14        BEFORE THE COURT are Defendant Kadlec Health System's Motion for

15 Summary Judgment (ECF No. 50), Plaintiff's Motion for Summary Judgment

16 (ECF No. 55), Defendant Kadlec Health System's Motion to Strike (ECF No. 67),

17 and Defendant Washington State's Motion to Dismiss (4:15-CV-5043-TOR, ECF

18 No. 9).[1]  These matters were heard with telephonic oral argument on September 1,

19 ─────────────────────
   [1] Defendant Washington State's motion was filed prior to the Court's consolidation

20 of Plaintiff's two cases, see ECF No. 12 in case file 4:15-CV-5043-TOR.  All

ORDER ON MOTIONS FOR SUMMARY JUDGMENT AND MOTION TO
DISMISS ~ 1

2015.  Plaintiff appeared *pro se*.  Jerome R. Aiken appeared on behalf of Defendant Kadlec Health Systems ("Kadlec").  Richard Arthur McCartan appeared on behalf of Defendant Washington State.  The Court has reviewed the briefing and the record and files therein, heard from counsel, and is fully informed.

BACKGROUND

On November 26, 2014, Plaintiff filed a complaint in this Court alleging Kadlec violated the Emergency Medical Treatment and Labor Act ("EMTALA"), 42 U.S.C. § 1395dd, by failing to evaluate or treat Plaintiff when she presented to Kadlec's emergency department on October 6, 2014.  ECF No. 1.  Plaintiff filed her Final Amended Complaint (FAC) on March 3, 2015.  ECF No. 38.  Kadlec filed an answer to the FAC on March 24, 2015.  ECF No. 44.

On May 27, 2015, Plaintiff filed a complaint in the companion case alleging claims against Kadlec, as well as Washington State and Defendant Alliance for Consistent Care Program.  4:15-CV-5043-TOR, ECF No. 1.  This complaint alleges causes of action against Defendants for violating the Americans with Disabilities Act ("ADA"), the Washington Law Against Discrimination ("WLAD"), and the Fourteenth Amendment.  *Id.* at 2.  Given the same questions of

---

record notations herein refer to documents filed in 4:14-CV-5118-TOR, unless otherwise noted.

ORDER ON MOTIONS FOR SUMMARY JUDGMENT AND MOTION TO DISMISS ~ 2

fact and law raised in the two matters, the Court consolidated the cases on July 31, 2015.  ECF No. 68; 4:15-CV-5043-TOR, ECF No. 12.  Plaintiff's causes of action articulated in her complaint in 4:15-CV-5043-TOR are thus incorporated into this consolidated action.  As it currently stands, Plaintiff has alleged violations of the EMTALA, the ADA, the WLAD, and the Fourteenth Amendment against each Defendant.

On July 1, 2015, Kadlec filed a motion for summary judgment challenging Plaintiff's claim that Kadlec violated the EMTALA.  ECF No. 50.  Plaintiff subsequently filed a cross-motion for summary judgment on her EMTALA claim. ECF No. 55.

On July 15, 2015, Washington State filed a motion to dismiss all claims against it pursuant to Federal Rule of Civil Procedure 12(b)(6).  4:15-CV-5043-TOR, ECF No. 9.  Plaintiff filed a response in opposition to that motion on July 21, 2015.  4:15-CV-5043-TOR, ECF No. 11.

### FACTS

On October 6, 2014, Plaintiff experienced a sudden onset of pain and flashing lights through the left side of her head and down through her left eye. ECF No. 38 at 4.  Plaintiff drove to the "Physicians Immediate Care" facility in Richland, Washington, where she was told she may be suffering a "little stroke" and that she should go to the emergency room.  *Id.*

Plaintiff then drove to Kadlec's emergency department. ECF Nos. 38 at 4; 51 at ¶ 1. Plaintiff entered the emergency department through the ambulance bay. ECF Nos. 38 at 4; 51 at ¶ 2; 52 at ¶¶ 2–3. Plaintiff was then escorted to the reception area where she was asked to register. ECF No. 38 at 4; 51 at ¶ 3; 52 at ¶ 4. Kadlec employs a standard registration procedure for all walk-in emergency patients which requests information from patients in order to prioritize those with greater need of medical care. ECF No. 52 at ¶ 4. It is not possible for a walk-in patient to register at the ambulance bay where Plaintiff initially entered. ECF No. 52 at ¶ 4.

Plaintiff contends that she was unable to complete the registration process because of her ongoing symptoms. ECF No. 38 at 4. Plaintiff contends further that the receptionist said Plaintiff had "a [something] ALERT" and then immediately told Plaintiff she was calling security and that Plaintiff would have to leave or the police would be called and Plaintiff would be arrested. ECF No. 38 at 5. In fear of arrest, Plaintiff left the emergency department and returned to her car. ECF No. 38 at 5. Plaintiff described her mindset after her departure as "terrified confused struggling desperate—going to die." *Id.*

Kadlec contends that Plaintiff left the emergency department voluntarily after she refused to follow Kadlec's standard registration procedure and was uncooperative with Kadlec staff. ECF Nos. 51 at ¶¶ 4–5, 8; 52 at ¶ 6. Kadlec

ORDER ON MOTIONS FOR SUMMARY JUDGMENT AND MOTION TO DISMISS ~ 4

1  contends further that Plaintiff did not appear to be in any physical distress and did

2  not appear to need emergency care.  ECF Nos. 51 at ¶¶ 5–6; 52 at ¶ 5.

3      After Plaintiff left the emergency department, she was later contacted by a

4  Richland Police officer near a park.  ECF No. 38 at 5.  The officer called an

5  ambulance, but Plaintiff refused help from the ambulance staff.  ECF Nos. 38 at 5;

6  63 at 22.  Plaintiff then returned home where her symptoms improved over the next

7  few days.  ECF Nos. 38 at 5; 63 at 21.

8                                    DISCUSSION

9                                I. Motion to Dismiss

10      A motion to dismiss for failure to state a claim pursuant to Federal Rule of

11  Civil Procedure 12(b)(6) tests the legal sufficiency of the Plaintiffs' claims.

12  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  A complaint must contain a

13  "short and plain statement of the claim showing that the pleader is entitled to

14  relief."  Fed. R. Civ. P. 8(a)(2).  This standard "does not require detailed factual

15  allegations, but it demands more than an unadorned, the-defendant-unlawfully-

16  harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell*

17  *Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

18      To withstand dismissal, a complaint must contain "enough facts to state a

19  claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim

20  has facial plausibility when the plaintiff pleads factual content that allows the court

ORDER ON MOTIONS FOR SUMMARY JUDGMENT AND MOTION TO
DISMISS ~ 5

to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  "Naked assertion[s]," "labels and conclusions," or "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555, 557.  While a plaintiff need not establish a probability of success on the merits, he or she must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678; *see also Johnson v. City of Shelby*, 135 S.Ct. 346, 347 (2014) (per curiam) ("A plaintiff . . . must plead facts sufficient to show that her claim has substantive plausibility.").

Generally, in assessing whether Rule 8(a)(2) has been satisfied, a court must first identify the elements of the plaintiff's claim(s) and then determine whether those elements could be proven on the facts pleaded.  *See Iqbal*, 556 U.S. at 675. While a plaintiff need not expressly identify a legal theory of liability, the plaintiff must plead sufficient facts to establish the substantive plausibility of some claim of liability.  *See Johnson*, 135 S.Ct. at 347.  In this evaluation, a court must accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the party opposing the motion.  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  However, the court need not accept "naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal quotations and brackets omitted).

ORDER ON MOTIONS FOR SUMMARY JUDGMENT AND MOTION TO DISMISS ~ 6

1    Plaintiff's complaint asserting claims against Washington State does not

2  include any factual allegations of wrongdoing by Washington State.  4:15-CV-

3  5043-TOR, ECF No. 1.  Plaintiff's complaint asserts that insurers and hospitals

4  devised a gambit by which to limit access to emergency rooms and contends this

5  saved money for Washington State and the hospitals.  *Id.* at 3.  The complaint also

6  asserts without any factual support that "Washington State has placed [restrictions]

7  on EMTALA."  *Id.*  Plaintiff fails to identify any such alleged restrictions.  *Id.*  The

8  factual content of Plaintiff's complaint does not allow the Court to draw a

9  reasonable inference that Washington State is liable for any misconduct, as it does

10  not specify any misconduct perpetrated by Washington State.  Plaintiff alleges in

11  her response to the motion to dismiss that the Defendants conspired to thwart

12  EMTALA, the ADA, the WLAD, and the Fourteenth Amendment.  4:15-CV-5043-

13  TOR, ECF No. 11.  Despite Plaintiff's contention that a conspiracy is "obvious,"

14  Plaintiff fails to point to any factual allegations that would support her claim.  Such

15  naked, unsupported assertions of liability are insufficient to survive dismissal.

16  *Twombly*, 550 U.S. at 555, 557.  As such, Plaintiff's claims against Washington

17  State lack facial plausibility and are therefore insufficiently pleaded.  *See Iqbal*,

18  556 U.S. at 678.

19    In Plaintiff's response and at oral argument, Plaintiff further explained that

20  Washington State, through its Medicaid program has been trying to limit its costs

ORDER ON MOTIONS FOR SUMMARY JUDGMENT AND MOTION TO
DISMISS ~ 7

and after three emergency room treatments in a year an "Edie Alert" would be placed in the file so hospital emergency rooms could shunt away to a social worker the mentally ill, the drug addicted and the Medicaid recipients. It is this alleged procedure that was agreed upon by Washington State and the hospitals that Plaintiff contends is a violation of EMTALA, the ADA, the WLAD and the Fourteenth Amendment. Washington State may well have participated in devising a method to control health care costs, but that does not automatically equate to a violation of one of the cited laws. It is just as likely that Washington State devised a way to better care for these individuals with recurrent medical emergencies, consistent with the law. Because naked, unsupported assertions of liability are insufficient to survive dismissal, *Twombly*, 550 U.S. at 555, 557, the Court must dismiss these claims.

"In dismissing for failure to state a claim, a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995) (internal quotation marks omitted). The Court finds that Plaintiff cannot cure her claims against Washington State.

Under the EMTALA, Plaintiff may raise a civil claim against any "participating hospital" that negligently violates a requirement of the EMTALA.

ORDER ON MOTIONS FOR SUMMARY JUDGMENT AND MOTION TO DISMISS ~ 8

1   42 U.S.C. § 1395dd(d)(2)(A).  Washington State is not a participating hospital

2   subject to civil liability under the EMTALA.  *See* 42 U.S.C. § 1395dd(e)(2) ("The

3   term 'participating hospital' means a hospital that has entered into a provider

4   agreement under section 1395cc of this title.").  Amendment of Plaintiff's

5   EMTALA claim against Washington State would be futile and the claim is

6   therefore dismissed without leave to amend.  *See Serra v. Lappin*, 600 F.3d 1191,

7   1200 (9th Cir. 2010).

8          The Equal Protection clause of the Fourteenth Amendment confers a right

9   upon individuals to be free from unlawful discrimination at the hands of

10  governmental actors.  *See, e.g.*, *Barnes-Wallace v. City of San Diego*, 704 F.3d

11  1067, 1085 (9th Cir. 2012).  Plaintiff has not alleged that any Washington State

12  actor participated in the events which occurred at the Kadlec emergency room on

13  October 6, 2014.  Plaintiff's factual allegations relate solely to the actions of

14  Kadlec employees.  Amendment of Plaintiff's Equal Protection claim against

15  Washington State would be futile and the claim is therefore dismissed without

16  leave to amend.

17         Likewise, under the ADA, Plaintiff has failed to allege that she was "denied

18  the benefits of the services, programs, or activities of a public entity."  42 U.S.C.

19  § 12132.  Amendment of the claim is futile as Plaintiff cannot allege facts that

20  would establish Kadlec was providing services as a public entity on behalf of

ORDER ON MOTIONS FOR SUMMARY JUDGMENT AND MOTION TO
DISMISS ~ 9

1   Washington State.  *See* 42 U.S.C. § 12131(1) ("The term 'public entity' means —

2   (A) any State or local government; [or] (B) any department, agency, special

3   purpose district, or other instrumentality of a State or States or local government . .

4   . .").  Amendment of Plaintiff's ADA claim against Washington State would be

5   futile and the claim is therefore dismissed without leave to amend.

6        Finally, under the WLAD, Plaintiff has failed to allege that the Kadlec

7   emergency room was a place of public accommodation operated by Washington

8   State.  *See* RCW 49.60.040(2) ("Any place of public . . . accommodation . . .

9   includes . . . where medical service or care is made available . . . ."); *Duvall v.*

10  *Cnty. of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001) ("[T]he elements of a prima

11  facie claim of discrimination in a place of public accommodation under the WLAD

12  are:  (1) the plaintiff is disabled; (2) defendant's establishment is a place of public

13  accommodation; (3) disabled persons are not provided services comparable to

14  those provided nondisabled persons by or at the place of public accommodation;

15  and (4) the disability was a substantial factor causing the discrimination.").

16  Kadlec's emergency room may be a public accommodation under the WLAD, but

17  Plaintiff has not and cannot allege facts which would establish the facial

18  plausibility that Washington State has any role in operation of Kadlec's emergency

19  room.  Amendment of Plaintiff's WLAD claim against Washington State would be

20  futile and the claim is therefore dismissed without leave to amend.

ORDER ON MOTIONS FOR SUMMARY JUDGMENT AND MOTION TO
DISMISS ~ 10

1    Plaintiff's complaint does not allege facts which establish the facial

2  plausibility of any claim against Washington State.  The Court concludes further,

3  that Plaintiff cannot allege any facts which would cure the defects identified.  As

4  such, the Court dismisses with prejudice Plaintiff's claims against Washington

5  State.

6    II. Motion for Summary Judgment

7    Summary judgment may be granted to a moving party who demonstrates

8  "that there is no genuine dispute as to any material fact and that the movant is

9  entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party

10  bears the initial burden of demonstrating the absence of any genuine issues of

11  material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The burden then

12  shifts to the non-moving party to identify specific genuine issues of material fact

13  which must be decided at trial.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

14  256 (1986).

15    For purposes of summary judgment, a fact is "material" if it might affect the

16  outcome of the suit under the governing law.  *Id.* at 248.  A dispute concerning any

17  such fact is "genuine" only where the evidence is such that a reasonable factfinder

18  could find in favor of the non-moving party.  *Id.* at 248.  In ruling upon a summary

19  judgment motion, a court must construe the facts, as well as all rational inferences

20  therefrom, in the light most favorable to the non-moving party.  *Scott v. Harris*,

ORDER ON MOTIONS FOR SUMMARY JUDGMENT AND MOTION TO
DISMISS ~ 11

550 U.S. 372, 378 (2007). "[A] district court is not entitled to weigh the evidence and resolve disputed underlying factual issues." *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1161 (9th Cir. 1992). Only evidence which would be admissible at trial may be considered. *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002).

Plaintiff alleges that Kadlec violated the EMTALA when it failed to evaluate or treat her on October 6, 2014. ECF Nos. 38; 55. Defendant contends that Plaintiff left voluntarily and that she has failed to produce sufficient evidence on the merits of her claim to survive summary judgment. ECF Nos. 50; 62.

"Congress enacted EMTALA, commonly known as the 'Patient Anti-Dumping Act,' in response to the growing concern about the provision of adequate medical services to individuals, particularly the indigent and the uninsured, who seek care from hospital emergency rooms." *Jackson v. E. Bay Hosp.*, 246 F.3d 1248, 1254 (9th Cir. 2001). The EMTALA imposes a series of duties upon hospital emergency departments. Relevant in this matter is the duty of a hospital to provide adequate screening of individuals for acute symptoms of emergency medical conditions.[2]

---

[2] The matter before the Court never progressed beyond the initial screening requirement and the Court's inquiry focuses on that requirement.

ORDER ON MOTIONS FOR SUMMARY JUDGMENT AND MOTION TO DISMISS ~ 12

If any individual "comes to the emergency department and a request is made on the individual's behalf for examination or treatment for a medical condition, the hospital must provide for an appropriate medical screening examination within the capacity of the hospital's emergency department . . . to determine whether or not an emergency medical condition . . . exists."  42 U.S.C. § 1395dd(a).  An "emergency medical condition" is "a medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in — (i) placing the health of the individual . . . in serious jeopardy, (ii) serious impairment of bodily functions, or (iii) serious dysfunction of any bodily organ or part . . . ."  42 U.S.C. § 1395dd(e)(1)(A).

"[A] hospital satisfies EMTALA's 'appropriate medical screening' requirement if it provides a patient with an examination comparable to the one offered to other patients presenting similar symptoms, unless the examination is so cursory that it is not 'designed to identify acute and severe symptoms that alert the physician of the need for immediate medical attention to prevent serious bodily injury.'"  *Jackson*, 246 F.3d at 1256 (quoting *Eberhardt v. City of Los Angeles*, 62 F.3d 1253, 1257 (9th Cir. 1995)).  The EMTALA's screening requirement is mandatory:  once a request for evaluation or treatment is made, a hospital must provide an adequate screening unless some other aspect of the EMTALA excuses

ORDER ON MOTIONS FOR SUMMARY JUDGMENT AND MOTION TO DISMISS ~ 13

the duty.  42 U.S.C. § 1395dd(a) (". . . the hospital *must* provide for an appropriate medical screening . . . ." (emphasis added); *see also Harry v. Marchant*, 291 F.3d 767, 773 (11th Cir. 2002) ("Congress' solution was to guarantee patient entry into the medical system via mandatory appropriate medical screenings and stabilization prior to transfer."); *Summers v. Baptist Med. Ctr. Arkadelphia*, 91 F.3d 1132, 1137–38 (8th Cir. 1996) ("[T]he statute is, as plaintiff argues, a strict-liability provision.  If a hospital fails to provide an appropriate medical screening examination, it is liable, no matter what the motivation was for this failure."); *Stevison by Collins v. Enid Health Sys., Inc.*, 920 F.2d 710, 713 (10th Cir. 1990) ("Section 1395dd(a) contains mandatory language.  Under the statute, the hospital *must* provide for medical screening if a request is made.  We construe this statute as imposing a strict liability standard subject to those defenses available in the act." (emphasis in original) (citation omitted)).  The burden rests upon Kadlec to demonstrate that it is excused from its screening duty.  *Stevison*, 920 F.2d at 713–14.

It is undisputed that Plaintiff presented to Kadlec's emergency department requesting evaluation and treatment on October 6, 2104, thereby invoking ~~Plaintiff's~~Kadlec's duty to provide adequate medical screening.  42 U.S.C. § 1395dd(a).  There is also no genuine dispute that Kadlec failed to provide Plaintiff with adequate medical screening to determine whether Plaintiff's acute symptoms

ORDER ON MOTIONS FOR SUMMARY JUDGMENT AND MOTION TO DISMISS ~ 14

were of sufficient severity to be considered an "emergency medical condition."

Plaintiff's sworn statements indicate no such screening was provided.  In response, Kadlec submitted a single affidavit from an employee who recalls the events of October 6, 2104.  ECF No. 52.  In this affidavit, Paul Brumfield, a registered nurse, states that while he was located "in an emergency department treatment room" he overheard Plaintiff enter the emergency department yelling the "entire time."  *Id.* at 52 ¶¶ 2–3 ("Ms. Baugher was not yelling about any medical complaints, but rather was simply yelling.").  Mr. Brumfield also states, "Based upon what I overheard from Ms. Baugher, she did not appear in any physical distress.  There appeared to be no need for emergency care."  *Id.* at ¶ 5.  Mr. Brumfield's vague reference to overheard comments is insufficient to establish that Kadlec provided Plaintiff with an adequate examination of the severity of her symptoms to determine whether she was in fact suffering from an emergency medical condition.  *See* 42 U.S.C. § 1395dd(a), (e)(1)(A).  Neither has Kadlec established that Mr. Brumfield is an individual qualified to make such an examination from his distant vantage point in another room.  *See* 42 C.F.R. § 489.24(a)(1)(i) ("The examination must be conducted by an individual(s) who is determined qualified by hospital bylaws or rules and regulations and who meets the requirements of § 482.55 of this chapter concerning emergency services personnel and direction . . . .").  Kadlec fails to present any evidence to rebut

ORDER ON MOTIONS FOR SUMMARY JUDGMENT AND MOTION TO DISMISS ~ 15

1    Plaintiff's contention that she was not provided an adequate medical screening on

2    October 6, 2014.

3          Instead, Kadlec defends on grounds that it was not required to provide

4    Plaintiff with an adequate screening because of Plaintiff's own conduct.  First,

5    Kadlec contends that it need not provide examination or treatment to patients who

6    do not follow its prescribed registration procedure.  ECF No. 50 at 3–5.  The

7    section of the federal regulations to which Kadlec cites for this argument is

8    applicable to "necessary stabilizing treatment" required *after* an adequate screening

9    is performed; it is not applicable to the initial screening itself.  *See* 42 C.F.R.

10   § 489.24(d)(4)(iv).[3]  A hospital may define its own screening procedures based

11   upon its capabilities, "including ancillary services routinely available to the

12   emergency department," but nothing in the statute allows a hospital to predicate

13   screening upon completion of a registration form.  42 U.S.C. § 1395dd(a); *see also*

14   42 C.F.R. § 489.24(d)(4)(iv) ("Reasonable registration processes may not unduly

15

16   [3] Likewise, the district court case to which Kadlec cites also involved alleged

17   wrongful actions, "not as part of the screening and stabilization process, but after

18   [plaintiff's] admission to the hospital."  *Quinn v. BJC Health Sys.*, 364 F. Supp. 2d

19   1046, 1054 (E.D. Mo. 2005).  The analogy to *Quinn* is not appropriate on the facts

20   before the Court.

ORDER ON MOTIONS FOR SUMMARY JUDGMENT AND MOTION TO
DISMISS ~ 16

1    discourage individuals from remaining for further evaluation."). Rather, the statute

2    and regulations impose an unconditional requirement that a hospital provide an

3    adequate medical screening within its capabilities when a patient has come to the

4    emergency department seeking evaluation and treatment.  42 U.S.C. § 1395dd(a);

5    42 C.F.R. § 489.24(a)(1).

6        Kadlec further contends that in refusing to follow the registration procedure,

7    Plaintiff voluntarily withdrew her request for treatment and left the emergency

8    department of her own free will.  *See* ECF No. 51 at ¶ 8.  A hospital may be

9    excused from the duty to screen if a presenting patient voluntarily withdraws her

10   request for examination or treatment.  *See Stevison*, 920 F.2d at 713 ("Here, there

11   is a factual dispute whether plaintiff withdrew her initial request for treatment.  It is

12   this alleged withdrawal, rather than a failure to consent, that is at issue.").

13   However, Plaintiff vigorously disputes that she left voluntarily and contends she

14   left under duress, the threat of arrest.

15       Plaintiff's sworn statements unequivocally establish she left because a

16   receptionist told her that she would be arrested and jailed if she did not.  ECF No.

17   38 at 5; 55; 57 ("I did not at all voluntarily leave Kadlec contrary to Kadlec's

18

19

20

ORDER ON MOTIONS FOR SUMMARY JUDGMENT AND MOTION TO
DISMISS ~ 17

account of events.").[4]  The record contains a document created by Kadlec which indicates there was an "Edie Alert" associated with Plaintiff that reads:

> Pt does not have a [primary care physician ("PCP")] at this time. Multiple attempts at locating at [sic] PCP willing to take this pt has been made.  Her behavior creates a barrier to any physician willing to accept her.  She has been discharged from two PCP's [sic] and she has had multiple refusals to take her on as a new patient due to her behavior and unwillingness to undergo psych evaluation.  No controlled substances should be administered in the ED or prescribed from the ED for subjective pain.  Pt exhibits bizarre behavior and it has been encouraged that she undergo psychiatric evaluation but she refuses.

ECF No. 2 at 2-3.  The language of the alert further supports Plaintiff's testimony that the receptionist read the alert and then, upon reading it, ordered Plaintiff to leave because Plaintiff had exhibited bizarre behavior in the past.

      To rebut Plaintiff's statements, Kadlec relies primarily upon two statements in Mr. Brumfield's affidavit.  First, Mr. Brumfield states, "It is my understanding

---

[4] A verified complaint, based upon personal knowledge and setting forth specific facts admissible in evidence, can be used as an opposing affidavit in evaluating motions for summary judgment.  *Schroeder v. McDonald,* 55 F.3d 454, 460 (9th Cir. 1995).  Plaintiff's FAC was verified because Plaintiff stated under penalty of perjury that the contents were true.  ECF No. 38 at 2, 6; *see also Schroeder,* 55 F.3d at 460 n.10.  As such, the Court treats the FAC as Plaintiff's affidavit for purposes of evaluating Kadlec's and Plaintiff's motions for summary judgment.

ORDER ON MOTIONS FOR SUMMARY JUDGMENT AND MOTION TO DISMISS ~ 18

in speaking with fellow staff after Ms. Baugher left the emergency department that she had failed to cooperate with Kadlec staff and complete the registration and triage process." This statement is inadmissible hearsay and may not be considered on a motion for summary judgment. *Orr*, 285 F.3d at 773.

Second, Mr. Brumfield states, "At no time did I hear a Kadlec staff member threaten Ms. Baugher with arrest." ECF No. 52 at ¶ 6. Mr. Brumfield does not assert that he was present for the entirety of the events on October 6, 2014. In fact, his affidavit relies heavily on what Mr. Brumfield "heard" while elsewhere or learned from other employees after the events concluded. *See* ECF No. 52. This statement merely establishes that Mr. Brumfield did not himself hear any statement threatening Plaintiff with arrest. It does not contradict or dispute Plaintiff's testimony that such a statement was made to her by the receptionist.

Kadlec also relies upon examples of Plaintiff's prior visits to Kadlec and other emergency departments to imply that on October 6, 2014, Plaintiff was acting in accordance with her alleged penchant for "voluntarily leaving hospitals prior to receiving treatment." ECF No. 62; *see also* ECF Nos. 53; 63. These prior presentations to emergency departments constitute inadmissible prior act evidence. Fed. R. Evid. 404(b) ("Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person

ORDER ON MOTIONS FOR SUMMARY JUDGMENT AND MOTION TO DISMISS ~ 19

acted in accordance with the character.").[5]  Conspicuously absent from the evidence Kadlec presents to support its motion and to oppose Plaintiff's motion is any declaration or affidavit by those who actually interacted directly with Plaintiff on October 6, 2014.  Kadlec has failed to present any admissible evidence to rebut Plaintiff's sworn testimony that she was told to leave Kadlec's emergency department on October 6, 2014. [6]

The strongest admissible evidence relevant to the ultimate determination whether Plaintiff voluntarily withdrew her request for examination and left the

---

[5] Kadlec has made no attempt to establish the admissibility of these instances as "habit" evidence under Rule 406.  *See United States v. Angwin*, 271 F.3d 786, 799 (9th Cir. 2001) ("In deciding whether certain conduct constitutes habit, courts consider three factors:  (1) the degree to which the conduct is reflexive or semi-automatic as opposed to volitional; (2) the specificity or particularity of the conduct; and (3) the regularity or numerosity of the examples of the conduct."), *overruled on other grounds*, *United States v. Lopez*, 484 F.3d 1186 (9th Cir. 2007) (en banc).

[6] Likewise, that portion of the "Event Chronology" submitted by Plaintiff containing an admission of a party-opponent, Fed R. Evid. 801(d)(2), also supports Plaintiff's testimony that she was told to leave.  ECF No. 55 at 4 ("THE FEMALE WAS ASKED TO LEAVE THE LOCATION").

ORDER ON MOTIONS FOR SUMMARY JUDGMENT AND MOTION TO DISMISS ~ 20

hospital of her own volition is Plaintiff's undisputed sworn statements.[7]  The Court

concludes this undisputed evidence shows Plaintiff left only because she was

threatened with arrest.  *Cf. Stevison*, 920 F.2d at 713–14 ("Because there is no

dispute here that a request was made, plaintiff satisfied her initial burden under the

statute.  It was then incumbent upon defendant to show by a preponderance of the

evidence that the request was withdrawn.").  As such, Plaintiff is entitled to

judgment as a matter of law that Kadlec violated the EMTALA by failing to

provide Plaintiff with an adequate medical screening.

Defendant argues that regardless of any alleged substantive violation,

Plaintiff cannot sustain her EMTALA claim because Plaintiff "has not established

that she in fact suffered personal harm that was directly caused by Kadlec."  ECF

Nos. 50 at 5; 62 at 3–4.  The EMTALA "authorizes two types of enforcement, an

administrative action for civil money penalties and a private right of action for civil

damages."  *Eberhardt*, 62 F.3d at 1256; *see also* 42 U.S.C. § 1395dd(d).  Civil

penalties under § 1395dd(d)(1) may only be initiated by the Secretary of Health

---

[7] Kadlec contends that Plaintiff's statements must be disregarded because they are

"self-serving, conclusory statements."  ECF No. 61 at 3–4.  Plaintiff's statements

encompass her own personal knowledge of the events of October 6, 2104, and are

both admissible and relevant.

and Human Services.  42 U.S.C. § 1320a-7a(c).

The EMTALA's private right of action, however, allows "[a]ny individual who suffers personal harm as a direct result of a participating hospital's violation" of an EMTALA requirement to "obtain those damages available for personal injury under the law of the State in which the hospital is located, and such equitable relief as is appropriate."  42 U.S.C. § 1395dd(d)(2)(A).  "By enacting this provision, Congress explicitly directed federal courts to look to state law in the state where the hospital is located to determine both the type and amount of damages available in EMTALA actions."  *Power v. Arlington Hosp. Ass'n*, 42 F.3d 851, 860 (4th Cir. 1994); *see also Hardy v. New York City Health & Hosp. Corp.*, 164 F.3d 789, 793 (2d Cir. 1999) ("EMTALA's deference to state law is also apparent in its express adoption of state law as to the damages recoverable.").

Under Washington law, a plaintiff asserting that a health care provider failed to provide acceptable care must show that "[s]uch failure was a proximate cause of the injury complained of."  RCW 7.70.040.  The Washington Supreme Court recognizes valid claims of medical malpractice for damages founded solely on emotional distress, without requiring proof of physical injury or objective symptomatology of the distress.  *Berger v. Sonneland*, 144 Wash. 2d 91, 111–13 (2001) (en banc).  Thus, Plaintiff may maintain a cause of action under the EMTALA for emotional distress that is proximately caused by Kadlec's conduct.

ORDER ON MOTIONS FOR SUMMARY JUDGMENT AND MOTION TO DISMISS ~ 22

*See, e.g.*, *Abney v. Univ. Med. Ctr. of S. Nevada*, 2011 WL 468349 at *4–5 (D. Nev. Feb. 4, 2011) ("[A] plaintiff's alleged emotional harm, prolonged suffering, and delayed recovery can create genuine issues of material fact on the element of personal harm."); *Pugh v. Doctors Med. Ctr.*, 2010 WL 2836971 at *4–5 (N.D. Cal. 2010) (applying California emotional distress standards to EMTALA claim).

Here, Plaintiff has not identified any direct physical injury she suffered as a result of her departure from Kadlec's emergency department without adequate screening. As Plaintiff has admitted, her symptoms improved on their own over the next few days. ECF Nos. 38 at 5; 63 at 22 ("[The symptoms are] greatly diminished at that point, which leads me to think this is getting better.").

Plaintiff's sworn affidavits do, however, indicate that she may have suffered from emotional distress after she left Kadlec's emergency department. *See* ECF No. 38 at 5 (". . . . i am terrified confused struggling desperate—going to die . . . ."). Kadlec does not dispute these statements. Whether Plaintiff's distress is ultimately compensable, however, requires the factfinder to consider the foreseeability of emotional distress based upon Kadlec's relationship to Plaintiff and the egregiousness of Kadlec's conduct. *See Schmidt v. Coogan*, 181 Wash. 2d 661, 673–74 (2014) (en banc). The causation of harm "is generally a question of fact for the jury, unless the proof is insufficient to raise a reasonable inference that the act complained of was the proximate cause of the injury." *Lies v. Farrell*

ORDER ON MOTIONS FOR SUMMARY JUDGMENT AND MOTION TO DISMISS ~ 23

*Lines, Inc.*, 641 F.2d 765, 770 (9th Cir. 1981) (internal quotation marks omitted). The Court concludes that a reasonable factfinder could find Plaintiff's distress is compensable and that it was proximately caused by Kadlec's actions.  As such, there remains a genuine dispute whether Plaintiff suffered a direct personal harm in this matter for which she may recover under the EMTALA.[8]

In sum, there is no genuine dispute that Plaintiff presented to Kadlec's emergency department on October 6, 2104, requesting evaluation and treatment for what she perceived as stroke-like symptoms.  There is also no dispute that Kadlec failed to provide Plaintiff with an adequate medical screening of those symptoms. Finally, there is no genuine dispute that Plaintiff left the emergency department because she was told that if she did not leave immediately the police would be called and she would be arrested.  Plaintiff is entitled to summary judgment on each of these factual matters.  However, there remains a genuine dispute whether

---

[8] The EMTALA also affords aggrieved individuals "such equitable relief as is appropriate."  42 U.S.C. § 1395dd(d)(2)(A).  Plaintiff had previously requested injunctive relief in this matter which the Court denied at that time.  *See* ECF Nos. 2; 4; 27; 30.  The Court will consider a renewed request for injunctive relief if and when Plaintiff establishes that she suffered a direct personal harm as a result of Kadlec's actions.

ORDER ON MOTIONS FOR SUMMARY JUDGMENT AND MOTION TO DISMISS ~ 24

1    Kadlec's actions proximately caused Plaintiff emotional distress and this matter

2    must be determined by a jury.

3          Plaintiff's motion for summary judgment regarding her EMTALA claim is

4    therefore granted in part.  Plaintiff's claims against Kadlec for violation of the

5    ADA, the WLAD, and the Fourteenth Amendment, as articulated in her complaint

6    filed in 2:15-CV-5043-TOR (ECF No. 1), remain pending in this consolidated

7    matter.

8          The file does not reflect that Defendant Alliance for Consistent Care

9    Program has been properly served.  Fed. R. Civ. P. 4(m) requires service within

10   120 days after the complaint is filed.  Plaintiff must serve Alliance for Consistent

11   Care timely or it will be dismissed from the case.

12                              III. Motion to Strike

13         Defendant has requested the Court to strike two documents Plaintiff has

14   filed.  ECF No. 67.  On July 28 and 29, 2015, Plaintiff filed two documents which

15   she captioned "(Expanded) Reply to Defendant's (Expanded) Response to

16   Plaintiff's Motion for Summary Judgment."  ECF Nos. 65; 66.  The local rules of

17   this Court allow a *pro se* litigant 21 days to file a reply.  LR 7.1(c)(2).  The local

18   rules also allow up to 10 pages for a reply to a dispositive motion.  LR 7.1(e)(1).

19   Moreover, pleadings can generally be amended within 21 days.  *See* Fed. R. Civ. P.

20   15(a).  Plaintiff's serial replies neither violate the timeliness nor page length

ORDER ON MOTIONS FOR SUMMARY JUDGMENT AND MOTION TO
DISMISS ~ 25

requirements of the Local Rule.  Defendant's motion to strike will be denied.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1.  Defendant Kadlec Health System's Motion for Summary Judgment (ECF No. 50) is **DENIED**.

2.  Plaintiff's Motion for Summary Judgment (ECF No. 55) is **GRANTED in part**.

3.  Defendant Washington State's Motion to Dismiss (4:15-CV-5043-TOR, ECF No. 9) is **GRANTED**.  All claims against Defendant Washington State are dismissed with prejudice.

4.  Defendant Kadlec Health System's Motion to Strike Plaintiff's Multiple Replies (ECF No. 67) is **DENIED**.

5.  Plaintiff must properly serve Defendant Alliance for Consistent Care Program within 120 days after the complaint was filed or it will be dismissed from the case. Fed. R. Civ. P. 4(m).

The District Court Executive is hereby directed to enter this Order, provide copies to counsel and Plaintiff, and terminate Defendant Washington State from the matter.

**DATED** September 3, 2015.

THOMAS O. RICE
United States District Judge

ORDER ON MOTIONS FOR SUMMARY JUDGMENT AND MOTION TO DISMISS ~ 26